**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHING-YUAN TSENG, et al.,

      *Plaintiffs*,

v.                                                                              Civil Action No. 1:20-cv-00435 (CJN)

JOSEPH R. BIDEN JR., President of the
United States, et al.,

      *Defendants*.

**<u>MEMORANDUM OPINION</u>**

Plaintiffs Ching-Yuan Tseng, Jung-Fei Ho, Ming-Hui Lin, and Chia-Heng Tsai reside in

Taiwan (formerly Formosa).  Am. Compl. at 12–16, ECF No. 5.  Proceeding *pro se*, they assert

practically incomprehensible claims against the President of the United States, the Prime Minister

of Japan, and the head of Taiwan's National Immigration Agency, appearing to allege that

Plaintiffs are U.S. nationals and should be issued passports (or "Certificate[s] of Identity") by

either the U.S. or the Japanese government.  *See generally* Am. Compl.  They also seek a writ of

habeas corpus, *id.* at 27–28, and request that the Court declare that (1) Taiwan lacks the authority

to issue travel documents to them, *id.* at 28, and (2) they are U.S. nationals who may travel freely

among "Formosa," the United States, and Japan, *id.* at 29–30.  Pending before the Court is the

government's Motion to Dismiss, ECF No. 25, as well as twenty-eight different motions filed by

Plaintiffs.[1]  Because Plaintiffs' claims require the Court to confront the delicate issue of

---

[1] See ECF Nos. 30, 33–34, 36–39, 41–42, 46–48, 50–52, 54–58, 61, 64–67, 74–76.

sovereignty over Taiwan, the political question doctrine bars consideration of those claims and the Court dismisses the Amended Complaint for lack of subject matter jurisdiction.

## I.     Background

## A.  Plaintiffs' Claims

The Amended Complaint is extremely difficult to understand, and largely consists of quotations to various case law and comments made by government officials.  *See generally* Am. Compl.  The Court nevertheless surmises that it presents three claims:  a habeas petition; a request for declaratory relief regarding Plaintiffs' nationality and the respective authorities of China, Taiwan, and the United States; and an APA challenge to Taiwan's issuance of Plaintiffs' current passports.  *See id.*  Because Plaintiffs do not allege that they are currently detained by Taiwan or any other sovereign, *see id.*, the foundation for their habeas claim is unclear.  As for their claims for declaratory relief, Plaintiffs ask the Court to declare that they are U.S. nationals and that the U.S. or Japanese government should issue them travel documents recognizing that fact; that Taiwan has no authority to issue them travel documents; and that Plaintiffs may freely travel among "Formosa," the United States, and Japan.  *Id.* at 28–31.  Plaintiffs' third claim is presented as an APA challenge to Taiwan's issuance of a passport (identifying the holder as a Chinese national) to at least one Plaintiff.  *Id.* at 31–32.

Plaintiffs have also filed twenty-eight separate motions.  While their Amended Complaint and motions are far from models of clarity, one thing is apparent:  at the heart of their claims is the issue of sovereignty over Taiwan.  The government moves to dismiss for precisely this reason, arguing that Plaintiffs' claims present a non-justiciable political question or, in the alternative, that Plaintiffs fail to state a claim for relief.  *See generally* Def.'s Mot. to Dismiss, ECF No. 25.

**B.  Taiwan's Sovereign**

In 1895, at the end of the Sino-Japanese War, China ceded the island of Taiwan (then known as Formosa) to Japan.  *Lin v. United States*, 561 F.3d 502, 504 (D.C. Cir. 2009).  Over fifty years later, at the end of World War II, Japan surrendered Taiwan to the Allied forces.  *Id.*  Specifically, General Douglas MacArthur ordered Japanese commanders within China and Taiwan to surrender to the leader of the Chinese Nationalist Party, Generalissimo Chiang Kai-shek.  *Id.*  Shortly thereafter, China became embroiled in a civil war that ended in 1949 with the communists' establishment of the People's Republic of China ("PRC") in mainland China and Chiang Kai-shek's flight to Taiwan to reestablish the Republic of China ("ROC") in exile.  *Id.*

In 1951, Japan signed the San Francisco Peace Treaty and renounced "all right, title, and claim to Formosa."  *Id.*  But that treaty did not declare which government exercises sovereignty over Taiwan—it identified the United States as "the principal occupying Power," but did not indicate over what.  *Id.*

Since then, sovereignty over Taiwan has been the subject of tension between the United States and China.  In 1954, the United States recognized the ROC as the government of China and acknowledged its control over Taiwan.  *Id.*  But as diplomatic relations with China improved, the U.S. posture on Taiwan evolved:  in 1972, the United States recognized that the PRC considered Taiwan a part of China and declined to challenge that position.  *Id.*  And in 1979, President Carter recognized the PRC as the sole government of China and withdrew recognition of the ROC.  *Id.*

Congress got involved in 1979, passing the Taiwan Relations Act of 1979 ("TRA"), 22 U.S.C. § 3301 *et seq.*, which described the United States' unofficial relationship with "the people on Taiwan," *id.* § 3301(a) ("[T]he Congress finds that the enactment of this chapter is necessary . . . to help maintain peace, security, and stability in the Western Pacific; and . . . authoriz[e] the

continuation of commercial cultural, and other relations between the people of the United States and the people on Taiwan.").  The TRA also established an entity called the American Institute in Taiwan, through which the United States maintains unofficial relations on the island.  *Id.* § 3305.

Today, the United States continues to "enjoy a robust unofficial relationship" with Taiwan, U.S. Dep't of State, *U.S. Relations With Taiwan*, U.S. Department of State (Aug. 31, 2018), https://www.state.gov/u-s-relations-with-taiwan/, but maintains "strategic ambiguity" with respect to the issue of sovereignty over the island, *see* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, Taiwan Assurance Act of 2020 § 312(6) (reinforcing the United States' "commitments to Taiwan under the [TRA]" but not discussing the issue of sovereignty over Taiwan); *see also Lin*, 561 F.3d at 505 (describing the United States' longstanding policy of "strategic ambiguity" regarding Taiwan's sovereign) .

## II.   Legal Standard

"Because Article III courts are courts of limited jurisdiction, we must examine our authority to hear a case before we can determine the merits." *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008) (quoting *United States v. British Am. Tobacco Australia Servs.*, 437 F.3d 1235, 1239 (D.C. Cir. 2006)).  On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction.  *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F. Supp. 3d 16, 24 (D.D.C. 2019) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)).  When contemplating a motion to dismiss pursuant to Rule 12(b)(1), the Court may consider materials outside the pleadings "to assure itself of its own subject matter jurisdiction."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (quoting *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)).

4

### III.   Analysis

Under the political question doctrine, a court must decline jurisdiction if there exists "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Baker v. Carr,* 369 U.S. 186, 217 (1962).  "[D]ecision-making in the fields of foreign policy and national security is textually committed to the political branches of government." *Schneider v. Kissinger,* 412 F.3d 190, 194 (D.C. Cir. 2005).  Deciding sovereignty is a political task, *Jones v. United States,* 137 U.S. 202, 212 (1890) ("Who is the sovereign, *de jure* or *de facto,* of a territory, is not a judicial, but a political[ ] question . . . ."), and the Court of Appeals has previously concluded that identifying Taiwan's sovereign is a non-justiciable political question, *Lin*, 561 F.3d at 506.  Any claim that requires the Court to decide that sovereignty issue lies outside of the Court's jurisdiction.  *See id.* (declining to exercise jurisdiction over claims when "[i]dentifying Taiwan's sovereign is an antecedent question").

Although the Amended Complaint appears to allege various causes of action—again, the Amended Complaint is no model of clarity—each claim appears rooted in Plaintiffs' assertion that the United States is Taiwan's sovereign.  *See generally* Am. Compl.  Plaintiffs essentially ask the Court to declare (1) U.S. sovereignty over Taiwan, (2) that the people of Taiwan are U.S. nationals with the rights and privileges that accompany such status, and (3) that Taiwan is incorrectly issuing travel documents that identify Plaintiffs as Chinese nationals.  Because it is impossible for the Court to decide these claims without identifying Taiwan's sovereign—an issue that the political branches have handled with extreme delicacy for the last fifty years, *see* discussion *supra* Part I.B—each claim presents a non-justiciable political question over which the Court cannot exercise

jurisdiction.[2]   For this reason, the Court concludes that it lacks jurisdiction over Plaintiffs' claims because they present a nonjusticiable political question.

In an attempt to stall dismissal, Plaintiffs seek a stay pending responses to their FOIA requests regarding control over Formosa through "White House Directives," and production of similar documents in Hong Kong and Singapore.  Pls.' Opp'n to Def.'s Mot. at 12, ECF No. 31. Plaintiffs' Opposition also attempts to amend the Amended Complaint.  *See id.* at 14–15.   The Court declines to consider the new claims presented in Plaintiffs' brief because "a party may not amend [its] complaint through an opposition brief."  *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) (citations omitted).  As for Plaintiffs' request for a stay, the Court finds a stay unnecessary.  "The authority to stay proceedings stems from 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Nat'l Indus. for the Blind v. Dep't of Veterans Affairs*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (quoting *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998)).  Because the forthcoming documents sought by Plaintiffs would not affect the Court's determination that it lacks subject matter jurisdiction, a stay would unnecessarily delay resolution of this case.

---

[2] Plaintiffs cannot rescue their claims by pointing to 8 U.S.C. § 1503.  *See* Am. Compl. at 31.  Section 1503 provides a cause of action to any person who is "a national of the United States."  8 U.S.C. § 1503.  Plaintiffs' entire basis for alleging U.S. nationality pursuant to Section 1503 is that they are from Taiwan (and, according to Plaintiffs, the United States exercises sovereignty over Taiwan).  *See generally* Am. Compl.  But in order to qualify as a "national of the United States," an individual must be "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."  8 U.S.C. § 1101(a)(22).  Because Plaintiffs do not allege that they are U.S. citizens and the only non-citizen nationals recognized under Section 1503 are persons born in American Samoa and Swains Island, *see Lin*, 561 F.3d at 508 ("Congress precisely defined a non-citizen national as, inter alia, a person 'born in an outlying possession of the United States on or after the date of formal acquisition of such possession.' The term 'outlying possessions of the United States' means American Samoa and Swains Island." (citations omitted)), they are not U.S. nationals granted protections under Section 1503.

**IV.   Conclusion**

The political question doctrine bars the Court's consideration of Plaintiffs' Amended Complaint because each of Plaintiffs' claims requires the Court to determine Taiwan's sovereign. The Court therefore lacks subject matter jurisdiction, grants the government's Motion to Dismiss, and denies Plaintiffs' twenty-eight remaining motions as moot.  An Order will be entered contemporaneously with this Memorandum Opinion.


DATE:  May 5, 2021

_____
CARL J. NICHOLS
United States District Judge